# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WALTER W. BLANCK,

    Plaintiff,

  v.                                  Case No. 07-C-0276

FEDERAL BUREAU OF INVESTIGATION,
Milwaukee Chemical Program, BUD HALL,
FBI Supervisor, GERRY MAGNUSON, Special Agent, FBI,
and AL NESS, Special Agent, FBI

    Defendants.

## DECISION AND ORDER

    Plaintiff, Walter W. Blanck, filed this pro se civil rights complaint and named four defendants: the FBI, a supervisor and two special agents. In an order dated December 20, 2007, I granted plaintiff's motion to proceed in forma pauperis and screened his complaint. I dismissed plaintiff's proposed Bivens claim, but determined that he could proceed on a claim against the FBI predicated on the Freedom of Information Act (FOIA).[1] Before me now are a number of non-dispositive motions, as well as defendant's motion for summary judgment.

---

[1] The FOIA does not create a cause of action for a suit against an individual employee of a federal agency. Petrus v. Bowen, 833 F.2d 581, 582 (5th Cir. 1987); Randle v. Comm'r of Internal Revenue Serv., 1992 WL 37444 *1, *2 (N.D. Ill. 1992). Federal agencies are proper parties in FOIA litigation. See 5 U.S.C. § 552(a)(4)(B). Therefore, the FBI is the proper agency defendant in this action. Plaintiff's claims against the three individual defendants ceased when I dismissed plaintiff's Bivens claims, and I will dismiss Bud Hall, Gerry Maguson and Al Ness as defendants in this action.

# I. PLAINTIFF'S MOTION TO COMPEL (DOCKET #116)

Plaintiff filed a motion to compel on April 23, 2008. He asks me to order the Director of the FBI for 1990, 1991, and 1992 to "explain and testify to" why the FBI offices in Milwaukee and Chicago kept the Director's office in D.C. updated on plaintiff's state criminal trials. Plaintiff also wants the Director of the FBI to state why "numerous FBI reports" listed plaintiff as armed and dangerous while he was in jail.

Although Fed. R. Civ P. 37 permits the court to compel discovery, the party seeking such discovery must complete several steps before court intervention is appropriate. The party seeking discovery must first direct his request to the opposing party. If the opposing party fails to provide the materials, the party must then personally consult with the opposing party and attempt to resolve their differences. Civ. L.R. 37.1 (E.D. Wis.). If the party is still unable to obtain discovery, he may file a motion to compel discovery with the court pursuant to Fed. R. Civ. P. 37(a). The movant "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). The local rules require a written statement that, "after personal consultation with the party adverse to the motion and after sincere attempts to resolve their differences, the parties are unable to reach an accord." Civil L.R. 37.1 (E.D. Wis.). A motion to compel discovery pursuant to Rule 37(a) is addressed to the sound discretion of the trial court. E.E.O.C. v. Klockner H & K Machines, Inc., 168 F.R.D. 233, 235 (E.D. Wis. 1996) (citation omitted).

Plaintiff has provided no indication that he followed the required procedure before bringing his motion to compel. Nor does his motion contain the certification regarding personal consultation required by Fed. R. Civ. P. 37(a)(1) and Civil. L.R. 37.1 (E.D. Wis.).

Moreover, the information requested is not relevant to plaintiff's only remaining claim, which relates to the reasonableness of defendant's response to plaintiff's FOIA request. For the foregoing reasons, I will deny plaintiff's motion to compel.

**II. DEFENDANT'S MOTIONS FOR LEAVE TO FILE (DOCKET #135 and #144)**

Defendant initially filed a Motion for Leave to File (Docket #135) on June 3, 2008. Defendant filed an Amended Motion for Leave to File a Vaughn[2] Index Based on Representative Sample (Docket #144) on June 6, 2008. I will deny as moot the original Motion for Leave to File.

Defendant has asked to file a Vaughn index using a representative sample of the more than sixteen hundred documents identified as responsive to plaintiff's FOIA request. "Representative sampling is an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved." Bonner v. U.S. Dept of State, 928 F.2d 1148, 1151 (D.C. Cir. 1991). It allows "the court and the parties to reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually through a Vaughn index or an in camera inspection." Id. With a well-chosen sample, a court can "extrapolate its conclusions from the representative sample to the larger group of withheld materials." Id. (internal quotation omitted). In Bonner, the court confirmed that a 63 document sample was capable of representing a group of 1,776 documents. Id.

Here, defendant has provided a Vaughn index that includes an approximately ten percent sample of the 1,663 documents identified as responsive to plaintiff's FOIA request.

---

[2] In Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973), the D.C. Circuit proposed that agencies provide courts with "a system of itemizing and indexing that would correlate statements made in the Government's refusal justification with the actual portions of the document."

Defendant has submitted an affidavit that the sample includes each of the various types of documents within the file, all categories of exemptions used and the entire date range of the records. I will accept the Vaughn index using the ten percent representative sample of the documents and grant defendant's amended motion for leave to file.

### III. PLAINTIFF'S MOTION TO APPOINT COUNSEL (DOCKET #149)

Plaintiff filed a motion asking me to appoint counsel in his case. He asserts that he has requested outside counsel on his own and all denied him, but he has submitted no evidence of his attempts to secure outside counsel or prospective counsels' responses to him. Plaintiff argues that he suffers from severe arthritis, cannot type and at times cannot hold a pen. He further contends that he "can't be expected to fight the entire might of US Atty's office and FBI after being disabled by these same defendants . . . ."

Although civil litigants do not have a constitutional or statutory right to appointed counsel, I have the discretion to request attorneys to represent indigents in appropriate cases pursuant to 28 U.S.C. § 1915(e)(1). Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir.2007); Luttrell v. Nickel, 129 F.3d 933, 936 (7th Cir.1997) (citing Zarnes v. Rhodes, 64 F.3d 285, 288 (7th Cir.1995)). As a threshold matter, litigants must make a reasonable attempt to secure private counsel on their own. Pruitt, 503 F.3d at 654; Zarnes, 64 F.3d at 288. Once this threshold burden has been met, I must address the following question: given the difficulty of the case, does this plaintiff appear competent to try the case himself and, if not, would the presence of counsel likely make a difference in the outcome of the case. Pruitt, 503 F.3d at 654-655 (citing Farmer v. Haas, 990 F.2d 319, 322 (7th Cir.1993)).

Because plaintiff has provided no evidence of his attempts, I am unable to determine whether he has met the threshold burden of making a reasonable attempt to secure private

4

counsel on his own. Nevertheless, plaintiff has been competent enough to bring his case this far. Given the nature of this FOIA action, and defendant's pending motion for summary judgment that is awaiting resolution, the presence of counsel would not likely make a difference in the outcome of this case. I will deny plaintiff's motion.

## IV. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOCKET # 133)

Defendant has filed a motion for summary judgment arguing that the FBI conducted a reasonable search and produced all documents responsive to plaintiff's request, except for those that are exempt from the FOIA's inspection requirements. Plaintiff's response does not challenge the reasonableness of the search or defendant's application of the FOIA exemptions.

### A. Summary Judgment Standard

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis deleted). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id. For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." Id.

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986), courts should

act with caution in granting summary judgment, Anderson, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. Id. at 248.

The moving party bears the initial burden of demonstrating that she is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the non-moving party's case, the moving party may satisfy her initial burden simply by pointing out the absence of evidence. Id. at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. Id. at 322-23. Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record — only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

**B.     Facts**

In February 2003, plaintiff, through counsel, submitted a FOIA request to the FBI Headquarters in Washington, D.C. As part of the response, plaintiff was advised that FOIA requests for FBI field office records must be submitted directly to the particular field office. Plaintiff, through counsel, then submitted a FOIA request to the FBI's Milwaukee field office

6

on April 26, 2003 seeking all files for Walter W. Blanck, Sr., a/k/a Willy Brownheimer. The request was forwarded to FBI headquarters and assigned Request No. 978804.

Defendant has provided extremely detailed proposed findings of fact, based on an extensive declaration from David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division, at FBI headquarters in Washington, D.C. Hardy describes with great specificity the search of the Milwaukee field office's Central Records System (CRS) that identified documents responsive to plaintiff's request.

The FBI uses the Automated Case Support System (ACS) to search the CRS. The search begins with the General Indices, which include automated records and index cards that are used to manually search for records that pre-date the 1995 implementation of ACS. The entries in the General Indices fall into two categories: "main" entries and "reference" entries.[3] The General Indices are the means by which the FBI can determine what retrievable information, if any, it may have in the CRS regarding a particular subject matter or individual. The FBI searched the General Indices for "Walter W. Blanck," as well as his aliases, Willie Brownheimer and Willy Brownheimer. Those searches would also locate records using the phonetic sounds of each last and first name to find variations of the name, including the use of a first initial rather than a first name. The FBI also used plaintiff's date of birth to facilitate the identification of requested records and to locate any main investigatory files. The searches produced one main Milwaukee filed office file (7-MW-

---

[3] In the absence of a specific request for a search of cross-references at the administrative level, the FBI's current policy is to search for and identify only "main" files responsive to FOIA/PA requests. In this case, plaintiff did not specifically request that a search be conducted for cross-references. Nevertheless, upon receiving notice of this litigation, the FBI conducted a search for all records responsive to plaintiff to include main files and cross-references. The FBI located no responsive cross-references.

24754) and one subfile (7-MW-24754 Sub1B2) that were responsive to plaintiff's request.

In July 2003, plaintiff informed the FBI that he was no longer represented by counsel and requested that the agency acknowledge and update his request. On July 17, 2003, the FBI informed plaintiff that it had located approximately 1,400 pages (later determined to be 1,663) that related to his request. The FBI also advised plaintiff of the applicable duplication fees, the three tracks of requests based on the amount of responsive material and the relative time frame for the different tracks. On August 5, 2003, plaintiff wrote to the FBI regarding payment and delivery of the responsive material.

On September 14, 2004, the FBI made a first interim release of 280 pages of documents to plaintiff in response to Request No. 978804 and requested that plaintiff submit a payment of $18.00 for duplication fees. Plaintiff paid the fee and advised the FBI of his desire to enlarge the scope of his original FOIA/Privacy Act request by seeking surveillance photographs of himself from between 1975 and 1983. On December 7, 2004, the FBI made a second and final release of 915 pages of documents (out of 1,244 reviewed) to plaintiff. The FBI advised plaintiff that certain information in the documents was exempt from disclosure pursuant to subsection (j)(2) of the Privacy Act and FOIA subsections (b)(2), (b)(7)(C), (b)(7)(D) and (b)(7)(F), and requested a payment of $91.50.

Plaintiff appealed to the Department of Justice (DOJ) Office of Information and Privacy (OIP). OIP advised plaintiff in a letter dated March 14, 2005, that no further action would be taken on his appeal until he paid the fees due. Plaintiff then paid the fees due and, in a letter dated September 6, 2005, OIP advised plaintiff that it had decided to affirm the FBI's action on his request. Plaintiff was advised: (1) that he was the subject of two Milwaukee field office main files; (2) that all of the records in those main files were exempt

from the access provisions of the PA as law enforcement files under 5 U.S.C. § 552a(j)(2); and (3) that the documents were reviewed under the FOIA to afford him the greatest possible access. He was further advised that the FBI properly withheld certain information that was protected from disclosure under FOIA pursuant to 5 U.S.C. § 552(b)(2), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and that the information was not appropriate for discretionary release.

In February 2003, plaintiff, through counsel, had also submitted a FOIA request to the Department of Homeland Security (DHS). While that request was being processed, FBI information was located and referred to the FBI for processing. The FBI assigned the information Request No. 1083102 and reviewed the eight pages of material located. In a letter dated October 22, 2007, the FBI released to plaintiff the additional eight pages of documents, with some redaction pursuant to the FOIA exemptions.

During preparation of the declaration filed in support of defendant's motion for summary judgment, an additional file was located for the plaintiff. That file was released to the plaintiff on May 28, 2008, with redactions, and with FOIA exemptions noted. A copy of that file, as redacted and with FOIA exemptions noted, has been filed under seal. No other responsive documents have been located.

Ultimately, the FBI identified 1,663 pages of documents responsive to plaintiff's request. All of the records identified were compiled for law enforcement purposes. Some of the records relate to the investigation of plaintiff by the FBI and local law enforcement agencies for a crime for which the plaintiff was convicted on state charges. Other records are from the Milwaukee Police Department concerning an unsolved murder investigation. The FBI applied the allowable exemptions and released to plaintiff 1,195 pages of

9

documents. Because of the large number of pages involved and the similar nature of the responsive documents, the FBI has selected a representative sampling of approximately ten percent of the responsive documents. The FBI also provided a Vaughn index summarily describing the exemptions applied to redact or withhold responsive documents under the FOIA.

**C.    Analysis**

The FOIA was enacted to maintain an open government and to ensure the existence of an informed citizenry as well as "to check against corruption and to hold the governors accountable to the governed." N.L.R.B. v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). It is to be construed broadly to provide the public with information in accordance with its purposes, and the exemptions from production are to be construed narrowly. U.S. Dep't of Justice v. Julian, 486 U.S. 1, 8 (1988).

Section 552(a)(4)(B) of the FOIA provides that:

> On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action. In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).

5 U.S.C. § 552(a)(4)(B).

Summary judgment for the defending agency is appropriate in a FOIA case if the agency can demonstrate that it has "conducted a search reasonably calculated to uncover all relevant documents." Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1353 (D.C. Cir. 1983); see also Zemansky v. U.S. E.P.A., 767 F.2d 569, 571 (9th Cir. 1985). The defending agency bears the burden of proving the adequacy of the search. Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994); Weisberg, 705 F.2d at 1350. And the court views the facts, and all reasonable inferences therefrom, in the light most favorable to the requester. Zemanksy, 767 F.2d at 571; Pollack v. U.S. Bureau of Prisons, 879 F.2d 406, 409 (8th Cir. 1989).

To prevail, the defendant agency must demonstrate that the search was adequate. Zemansky, 767 F.2d at 571. This inquiry depends on whether the search was reasonable under the facts of the case. Id. The agency "must make a diligent search for the requested documents in the places in which they might be expected to be found." Chamberlain v. U.S. Dep't of Justice, 957 F. Supp. 292, 294 (D.C. Cir. 1997). The agency must show only that the search was reasonable, not that it was exhaustive or that every document has been located. Zemansky, 767 F.2d at 571.

The agency may satisfy its burden by providing "reasonably detailed, nonconclusory affidavits submitted in good faith." Id., (quoting Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); see also Carney, 19 F.3d at 812. At a minimum, the affidavits or declarations should provide detail about the method and scope of the search. See Maynard v. C.I.A., 986 F.2d 547, 559 (1st Cir. 1993).

Defendant's motion for summary judgment is supported with a detailed and non-conclusory affidavit indicating that reasonable searches for the document were conducted.

11

Becker v. I.R.S., 34 F.3d 398, 406 (7th Cir. 1994). Agency affidavits are entitled to a presumption of good faith that cannot be rebutted by purely speculative claims about the existence and discoverability of other documents, such as plaintiff's claims about a chemical program. Safecard Services, Inc. v. S.E.C., 926 F.2d 1197, 1200 (D.C. Cir. 1991).

If, as here, the agency has provided the required affidavits, the burden shifts to the requester to raise a material factual issue concerning the reasonableness of the search. Miller v. U.S. Dep't of State, 779 F.2d 1378, 1384 (8th Cir. 1985). This can be done by "contradicting the [agency's] account of the search procedure or by raising evidence of the [agency's] bad faith." Id.; see also Carney, 19 F.3d at 812. That no documents responsive to the request were uncovered does not, by itself, constitute evidence of unreasonableness or bad faith. See Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State, 818 F. Supp. 1291, 1295 (N.D. Cal. 1992).

Plaintiff raises no genuine issue of material fact with regard to the adequacy of the search for documents. I have gleaned from plaintiff's pleadings that he is dissatisfied with the FOIA search and release of documents because it failed to yield certain information he seeks. Namely, plaintiff believed the search would uncover records of his forced participation in a chemical testing program during which "life-altering" chemicals were given to him. Yet the fact that the defendant's search failed to turn up the document(s) does not render the search inadequate; the adequacy of the search is determined by the appropriateness of the method. Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003). As noted, once the agency establishes the adequacy of the search, the burden shifts to the plaintiff to make a showing of bad faith sufficient to impugn the agency's affidavits or declaration. Carney, 19 F.3d at 812-13. The plaintiff has not met this burden.

12

The record is such that no reasonable jury could find that the defendant did not carry out an adequate search fully consistent with the requirements of the FOIA.

Further, all of the documents identified in response to plaintiff's request are law enforcement records and are therefore exempt from mandatory disclosure under the Privacy Act. 5 U.S.C. § 552a(j)(2). The FBI initially denied access to the records pursuant to the Privacy Act, and then considered the records for release pursuant to the access provisions of the FOIA in order to provide plaintiff with the maximum disclosure authorized by law. The FBI redacted or withheld certain information pursuant to exemptions under the FOIA to protect the following categories of information: FBI telephone and facsimile numbers, permanent source symbol numbers, informant file numbers, federal grand jury information withheld pursuant to Federal Rule of Criminal Procedure 6(e), and names and/or identifying data of FBI special agents and support personnel, local law enforcement personnel, non-FBI federal governmental personnel, third parties who provided information to the FBI, third parties who were of investigative interest to the FBI and/or local law enforcement entities, other third parties merely mentioned, and the victim. See 5 U.S.C. § 552(b)(2), (b)(3) and (b)(6). The FBI also applied exemptions to withhold records that, if produced, would reasonably interfere with law enforcement proceedings, result in unwarranted invasion of personal privacy or divulge the names and/or identifying data of FBI Special Agents and support personnel, local law enforcement personnel, federal governmental personnel, various third parties, and victims. See id. § 552(b)(7)(A) and (b)(7)(C). The FBI further applied exemptions to protect confidential source material, information provided to third parties to the FBI under an implied assurance of confidentiality, and investigative information

13

compiled by local law enforcement agencies and provided to the FBI under an implied assurance of confidentiality. See id. § 552(b)(7)(D).

A court need not review documents withheld under FOIA exemptions if the withholding agency provides sufficiently detailed affidavits describing what documents were withheld and explaining why they fit a cited exemption. In re Wade, 969 F.2d 241, 246 (7th Cir. 1992); Silets v. Dep't of Justice, 945 F.2d 227, 229-32 (7th Cir. 1991) (en banc). Such affidavits will suffice unless there is evidence to contradict them or to show that they were made in bad faith. Silets, 945 F.2d at 229.

I have reviewed defendant's detailed presentation of the exemptions in its brief, proposed findings of fact, Vaughn index, and Hardy's declaration under penalty of perjury. The declaration and other evidence is sufficiently detailed in describing the documents withheld and the applicable exemptions. Moreover, plaintiff has submitted no evidence either contradicting the declaration and accompanying exhibits, nor showing that the declaration was made in bad faith. I have also reviewed the representative sample of the responsive documents and conclude de novo that the FBI correctly applied the FOIA exemptions when it redacted and withheld certain pages from the disclosure. See id. § 552(a)(4)(B).

## V. ADDITIONAL MOTIONS

Plaintiff also has filed several other motions, including: (1) a motion to order defendants to send all FOIA release documents to the court; and (2) a motion for full access to investigative committee; (3) a motion to examine the file in Case No. 02-C-0290; and (4) a motion for hearing. Because I am granting defendant's motion for summary judgment, each of these motions will be denied as moot.

14

Case 2:07-cv-00276-LA    Filed 03/17/09    Page 14 of 16    Document 195

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Bud Hall, Gerry Magnuson and Al Ness will be **DISMISSED** as parties to this action.

**IT IS FURTHER ORDERED** that plaintiff's motion to compel (Docket #116) is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion for leave to file (Docket #135) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that defendant's amended motion for leave to file Vaughn index (Docket #144) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel (Docket #149) is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (Docket #133) is **GRANTED**.

**IT IS ALSO ORDERED** that the Clerk of Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that plaintiff's motion to order defendants to send all FOIA release documents to court (Docket #119) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's motion for full access to investigative committee (Docket #148) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's motion to examine 02-C-0290 (Docket #154) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's motion for hearing (Docket #156) is **DENIED AS MOOT**.

Dated at Milwaukee, Wisconsin, this 16 day of March, 2009.

/s
LYNN ADELMAN
District Judge